·WILCOXON *vs.* ROGERS ET UX.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST. MARY, THE JUDGE OF THE SEVENTH PRESIDING.

Titles to land must be located according to their calls; and, where part of the place called for by the title, is abandoned, and another person locates it and acquires a better title, the party abandoning cannot make his location in another place to the prejudice of others. He must suffer the loss.

Where two confirmations of land titles are of equal dignity, and one *is* regularly located and accompanied by possession, and no steps taken by the other, the first will hold the land by the prescription of ten years.

A corporeal possession in the beginning, a civil one will be sufficient to complete the possession already begun, and to support the prescription of ten years.

This is a petitory action. The plaintiff alleges, he is owner and possessor of one thousand arpents of land situated at the confluence of the rivers Teche and Atchafalaya, having twenty-five arpents front on the Teche. He derives title from the heirs and legal representatives of Henry and John Bosler, deceased. He further alleges, that Matthew Rogers and wife have taken illegal and forcible possession of a part of said land, and have committed waste thereon to his damage one thousand dollars. He prays judgment dispossessing the defendants of his land and for his damages. The defendants denied generally the allegations, and averred that they were the lawful owners of land on the east side of the Teche, having a front of seven arpents with the depth of forty; the title to which they derived from Levi Foster, who held under one Wm. Biggs. That Foster sold to the former husband of one of the defendants (Sojourner,) with warranty, and has since died, leaving a widow who is administratrix of his estate, and whom they call in warranty. They plead prescription of thirty, twenty, and ten years; and pray to be quieted in their title and possession to said land.

The widow Foster set up title under Biggs, from whom her husband purchased the 5th November, 1816. She calls the heirs of Biggs in warranty. Biggs's heirs denied the right of the plaintiff, or widow Foster, to recover. They aver their ancestor had a good title to six hundred and forty acres of land on the east side of the Teche, the title to which was confirmed by Congress the 29th April, 1816. They admit their ancestor sold to Levi Foster the tract of land specified; that he acquired it by a valid title; and that the plaintiffs have no title. They deny that this is the same land sold by Foster to Sojourner; and also deny that they are responsible to Foster's widow in warranty; and plead prescription of ten and twenty years.

On the trial, the plaintiff exhibited title to a tract of twenty-five arpents front of land on the east side of the Teche, at *or near* its junction with the Atchafalaya, which was granted by virtue of a *requête* to John and Henry Bosler, dated 7th December, 1801, on a certificate of vacancy by the commandant. This title was confirmed by the government of the United States the 29th April, 1816.

The defendant showed title under Biggs, who had possession and resided on the land. The main contest arises out of the manner of locating these claims.

The plaintiff contends, that his land cannot be located at the confluence of the two rivers, according to the calls of the title, because an older claim of one Jacques Deronen covers that part, or about one hundred and twenty acres, and pushes his land higher up the Teche, and that Bosler's title is superior to Biggs's; and he further insists, that he has a right to push up the latter and take his quantity from the defendants who reside on it.

Biggs's heirs showed title, confirmed by the government, in proof of possession, founded on settlement, occupancy and cultivation, from 1801 and '2 up to the present time.

The district judge was of opinion, after an attentive examination of all the evidence and titles, that the defendants had the best title, and were entitled to the land they claimed.

There was judgment in their favor, and the plaintiff appealed.

*T. H. Lewis*, for the appellant.

*Splane*, contra.

*Simon, J.,* delivered the opinion of the court.

Plaintiff sets up title to a tract of land situated at or near the confluence of the rivers Teche and Atchafalaya, containing twenty-five arpents front on the river Teche, or about one thousand superficial arpents, which title is derived from the heirs and representatives of John and Henry Bosler. He alleges, that the defendants have taken possession of a part of his land, and prays that they be ordered to remove from said land. He also prays for one thousand dollars damages.

Defendants called in their warrantors, who all filed their answers, in which they allege that William Biggs, under whom they hold, had good and valid titles to six hundred and forty acres of land on the east side of the bayou Teche, acquired from the government of the United States by settlement, and regularly confirmed and located. They also plead the prescriptions of ten and twenty years. The inferior court quieted the defendants in their title to and possession of their tract; from which judgment, plaintiff appealed.

The titles of the plaintiff are predicated upon a *requête* and certificate of vacancy signed by the Spanish commandant, dated 7th December, 1801, in which the Boslers demand a concession of twenty-five arpents in front, by the ordinary depth of forty, situated at the mouth of the river Teche, on the east side. A part of this tract (six hundred and forty acres,) was confirmed in their favor on the 5th of September, 1811; and the balance of two hundred and six acres, was confirmed to them by act of Congress of the 29th April, 1816. The first confirmation was located, by a regularly approved plat, on the 28th of November, 1813, the upper

line of which calls for the defendants' tract; and the second confirmation never was located.

Defendants' claim is founded on a permission to settle, given to Biggs by the commandant of Attakapas in 1801, and upon Biggs's settlement in 1802, with proof of possession and occupancy, by virtue of which he was confirmed in his tract to the extent of six hundred and forty acres, by act of congress of the 29th of April, 1816. This confirmation was located by a plat of survey made on the 24th February, 1819, and approved on the 5th of October, 1824. The lower line of this plat calls for Bosler's.

From the parole evidence, it appears that Bosler's settlement was originally on a mound at the point of confluence of the two rivers, where they had a house; and that Biggs's settlement was about a mile from said point. Biggs occupied and cultivated a part of the land for a number of years, and was living upon it when he exchanged with Foster, (5th of November, 1816.) Sojourner purchased of Foster in 1828, and continued to possess and cultivate the land. There is proof of payment of taxes by Biggs, Foster, and Sojourner; and the surveyor, appointed by the court, shows the old marks and boundary posts which he found on the tracts to correspond with the approved surveys.

From the returns of the surveyor, it appears that the point at the confluence of the two rivers, to the extent of one hundred and twenty acres, is claimed by one Jacob Deronen, by virtue of a Spanish title regularly confirmed; that this quantity is not included in the survey made for the plaintiff in 1813; and the plaintiff contends that he has a right to make up that deficiency by carrying his line further up, and taking the same quantity out of defendant's tract. He also maintains, that as his second confirmation, for two hundred and six acres, grows out and is a part of the tract which he originally owned, that he is entitled to locate it above the upper line of his first confirmation, so as to make it an entire body of land between the upper line of Deronen's tract and the removed lower line of the defendants.

WESTERN DIST.
*September*, 1840.

WILCOXON
*vs.*
ROGERS ET UX.

Titles to land must be located according to their calls; and where part of the place called for by the title is abandoned, and another person locates it, and acquires a better title, the party abandoning cannot make his location in another place, to the prejudice of others. He must suffer the loss.

When the plaintiff located his first confirmation, he thought proper to abandon the very spot of his vendor's original settlement at the mouth of the river, which place his title calls for, and to carry his lower line further up. This was certainly irregular, and the circumstance of his titles conflicting with Deronen, cannot turn to the prejudice of the defendants. It is a well settled rule, that titles must be located according to their calls; and it is clear, that if Deronen had a better title than plaintiff to the one hundred and twenty acre tract, plaintiff was to suffer the loss, since his title calls for the very place where Deronen located his. This plaintiff knew at the time he made his survey, as he then extended his lines so as to include the balance of his tract, under the first confirmation, between the upper line of Deronen's and the lower line of the defendants', after abandoning the one hundred and twenty acres conflicting with Deronen. This part of the plaintiff's claim must therefore be rejected.

Where two confirmations of land titles are of equal dignity, and one is regularly located and accompanied by possession, and no steps taken by the other, the first will hold the land by the prescription of ten years.

The next question is with regard to the second confirmation, which plaintiff seeks to locate on defendants' tract. Both confirmations were obtained by the same act of congress, and are, therefore, of equal dignity; but the defendants caused their title to be regularly located, and no attempt has been made to show that plaintiff ever took any step to locate his. Defendants were in the actual and corporeal possession of the land, in good faith, at the time their confirmation issued, and the subsequent location afforded them the means of ascertaining the metes and bounds of the tract which they were then possessing by virtue of a just title, by them definitively acquired in 1816. Although Foster did not, perhaps, continue to have the corporeal possession of the land after his purchase, he possessed it civilly, *animo domini*, and by virtue of a title sufficient to transfer the property. Sojourner purchased in 1828, took immediate possession of the tract, put it in cultivation; and as it is perfectly clear, and cannot be controverted, that the actual possessor, who proves that he or his authors have formerly been in possession, is to be presumed to have been in possession in the intermediate time; *Louisiana Code,*

*article* 3458 : that when a person has once acquired posses- sion of a thing by the corporeal detention of it, the intention of possessing suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody ; *Idem.*, 3405 : and that, to plead the prescription of ten years, it is only necessary to show a corporeal possession in the beginning, a civil one being sufficient to complete the possession already begun. *Idem.*, *article* 3453. We are of opinion that the defendants, having satisfactorily established that they have possessed the tract of land confirmed in their favor, in good faith, by virtue of a just and legal title, during more than ten years previous to the institution of this suit, (*Idem.*, *articles* 2445, 6, 7, 8, 9, *and others*,) have acquired such title, by prescription, as ought to be considered sufficient to defeat the plaintiff's pretensions.

A corporeal possession in the beginning, a civil one will be sufficient to complete the possession already begun, and to support the prescription of ten years.

For these reasons, we come to the conclusion that the judge *a quo* did not err in giving judgment in favor of the defendants.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.